UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JONASER CASTANEDA, ET AL.

VERSUS

EMPATH, LLC

CIVIL ACTION

NO. 19-131-JWD-EWD

**NOTICE AND ORDER**

Before the Court is a Supplemental Emergency Motion for Protective Order, Sanctions, and Corrective Notice (the "Motion")[1] filed by plaintiffs, Jonaser Castaneda and Greg Paliaro ("Plaintiffs"). For the reasons set forth herein, Plaintiffs are ordered to serve the Motion and this Notice and Order on defendant, Empath, LLC ("Defendant"), confer with Defendant regarding the Motion, and file either a Supplemental Certification or a Motion to Withdraw the Motion. In the event the parties are unable to resolve the issues raised in the Motion, Defendant shall file a response to the Motion within twenty-one (21) days of service of the Motion and this Notice and Order.

**I. Background**

On February 28, 2019, Plaintiffs filed a Collective Action Complaint (the "Complaint") pursuant to the Fair Labor Standards Act ("FLSA") on behalf of themselves and "all other similarly situated Technicians"[2] based on Defendant's alleged failure to pay Plaintiffs and other Technicians for "all hours worked" and "appropriate overtime wages…."[3] Plaintiffs seek an award of wages for all hours worked up to forty (40) hours per week, overtime compensation for all hours worked

---

[1] R. Doc. 16.

[2] R. Doc. 1, ¶ 3.

[3] R. Doc. 1, ¶ 1.

in excess of forty (40) hours per week, an equal amount as liquidated damages, and reasonable attorneys' fees and costs.[4]

Per the instant Motion, Plaintiffs assert that on May 21, 2019, one day following Defendant's receipt of the Complaint, "Defendant called a meeting of its cable technicians at the Baton Rouge office and attempted to settle their overtime and unpaid wage claims in exchange for the potential class members execution of certain confidentiality agreement[s] and waive[r] of litigation and FLSA rights."[5] Plaintiffs contend that Defendant's actions warrant sanctions, and request an order from this Court "requiring (1) that Defendant provide a listing of all telephone numbers and e-mail addresses of putative class members that received Defendant's documents evidenced by Exhibit 2, (2) monetary sanctions that would include attorneys' fees and costs, including the costs of a third-party to evaluate the monetary claim of all potential class members; (3) the delivery of a corrective notice to the class to be paid for by Defendant, (4) striking as invalid any signed agreements and waivers, and (5) a tolling of the claims of all potential class members."[6]

## II. Law and Analysis

"[C]ourts have the authority to govern the conduct of counsel and parties in § 216(b) collective actions, just as they do in Rule 23 class actions."[7] "[B]ecause of the potential for abuses in collective actions, such as unapproved, misleading communications to absent class members, a

---

[4] R. Doc. 1, p. 7.

[5] R. Doc. 16-1, pp. 1-2.

[6] R. Doc. 16, p. 2. Plaintiffs do not provide proposed language for the requested "corrective notice."

[7] *Santos-Lemos v. Tasch, LLC*, 313 F.Supp.3d 717, 721 (E.D. La. 2018) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989)). *See also*, *Peralez v. Express Drilling Fluids, LLC*, Civil Action No. 2:18-cv-00032, 2018 WL 2985884, at 5 (S.D. Tex. April 18, 2018) ("While this is a FLSA collective action instead of a Rule 23 class action, the same considerations apply." "Courts have condemned attempts to affect a class member's decision to participate in litigation, or to undermine a class plaintiff's cooperation with class counsel. Given the potential for abuse, the Court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.") (internal citations omitted).

district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."[8] "This 'managerial responsibility begins once the collective action is filed, before the court conditionally certifies the class or authorizes a section 216(b) notice.'"[9]

As one district court recently explained:

> Communications found violative of the principles of Rule 23 include misleading, coercive, or improper attempts to undermine Rule 23 by encouraging class members not to join a suit. Unlimited contacts by defendants with class members or potential class members may serve to undermine the purposes of Rule 23 by allowing defendants to reduce their liability and encourage potential class members not to join a suit. Thus, where an alleged class action has been filed but certification has not yet been decided, a court may issue a limitation on *ex parte* contact under Rule 23, if it is clear the defendant is attempting to engage in conduct which would undermine the purposes of the rule. This rule also applies after a district court has certified a class, and the notices have been approved.
>
> An order limiting communications between parties and class members, however, is a prior restraint on speech. The Court will only consider the narrowest possible relief "that limits speech as little as possible consistent with the rights of the parties under the circumstances." However, "when a given form of speech is inherently conducive to overreaching and duress," a showing of a particular existing harm is not required; a likelihood of serious abuse is sufficient. Speech between parties with an ongoing business relationship is inherently conducive to coercive influence, and an employer-employee relationship is a salient example of this type of ongoing business relationship.
>
> Nonetheless, an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. The Eleventh Circuit identified four criteria that are relevant to determining whether an order limiting contacts with class members

---

[8] *Santos-Lemos*, 313 F.Supp.3d at 721 (citing *Belt v. Emcare, Inc.*, 299 F.Supp.2d 664, 667 (E.D. Tex. 2003) (internal quotations omitted).

[9] *Id.* (quoting *Vogt v. Texas Instruments, Inc.*, No. 05-2244, 2006 WL 4660133, at * 2 (N.D. Tex. Aug. 8, 2006)).

> is needed: the severity and likelihood of the perceived harm, the availability of a less onerous alternative, the precision with which the order is drawn, and the duration of the order.[10]

Applying this standard, courts in this Circuit "may not restrict communications 'without a specific record showing by the moving party of the particular abuses by which it is threatened'"[11] and have refused to limit a defendant's communications with potential class members based on insufficient or speculative evidence.[12] Conversely, narrow limitations on the right to contact potential class members have been imposed where there is a showing that communications "in some way deprive

---

[10] *Peralez*, 2018 WL 2985884, pp. 5-6 (internal citations omitted) (adopting legal standards outlined in *Mejia v. Bros. Petroleum, L.L.C.*, No. CIV.A. 12-2842, 2015 WL 631346, at *3–4 (E.D. La. Feb. 13, 2015) and *Castillo v. Hernandez*, No. EP-10-CV-247-KC, 2011 WL 1528762, at *3 (W.D. Tex. Apr. 20, 2011)). *See also*, Local Civil Rule 23(c) (outlining requirements when a "party or counsel desires to prohibit another party or counsel from communicating concerning such action with any potential or actual class member not a formal party to the action….").

[11] *Santos-Lemos*, 3113 F.Supp.3d at 722 (citing *Gulf Oil Company v. Bernard*, 452 U.S. 89, 102 (1981)).

[12] *See*, *Jaso, Jr. v. Bulldog Connection Specialists, LLC*, Civil Action No. 1:15-cv-269, 2015 WL 11144603, at * 7 (S.D. Tex. Oct. 15, 2015) (finding plaintiff's declaration that other employees would be willing to join FLSA collective action if defendant did not retaliate or intimidate them too speculative to support a restriction on defendant's speech because plaintiff did not set forth any specific facts tending to show defendant would retaliate or intimidate and explaining that "the Court must make specific findings based on a clear record that a particular form of communication has occurred or is threatened to occur, speculation does not, without more, entitle an FLSA plaintiff to a protective order restricting an employer's communications with members of the potential opt-in class."); *Mejia v. Brothers Petroleum, LLC*, Civil Action No. 12-2842, 2015 WL 631346, at * 4 (E.D. La. Feb. 13, 2015) (competing affidavits insufficient to warrant grant of protective order); *Burrell v. Crown Central Petroleum, Inc.*, 176 F.R.D. 239, 245 (E.D. Tex. 1997) (noting plaintiff's declaration attesting to the "gist of" a company presentation regarding litigation was insufficient to warrant a restraint on speech and explaining "[t]here is no evidence that the company misled the employees in its presentation, or that the company tried to discourage participation in the lawsuit. Simply because the company chooses to keep its employees informed of litigation affecting the company does not attach an improper motive. Without evidence of coercion, misleading statements, or efforts to undermine the purposes of Rule 23, the court cannot make the proper findings required by the Supreme Court in *Gulf Oil Co. v. Bernard*. The plaintiffs currently in the litigation still work for Crown. If, at some future date, Crown crosses the line into improper contact or coercion, then plaintiffs may re-urge their motion. At the present time, however, there is no evidence upon which to base an order limiting communications with potential class members."); *Basco v. Wal-Mart Stores, Inc.*, No. Civ. A. 00-3184, 2002 WL 272384, at * 3 (E.D. La. Feb. 25, 2002) (finding insufficient record to warrant interference with defendant's speech and explaining "while it is evident that there is an ongoing business relationship between employee and employer, it is not enough that a potentially coercive situation exists.").

members of the putative class of their rights."[13] For example, in *Belt v. Emcare, Inc.*,[14] the Eastern District of Texas restricted defendants' *ex parte* communications with absent class members in a FLSA collective action where, one day prior to the issuance of the court approved notice to potential class members, defendant EmCare unilaterally sent a letter to potential class members in which EmCare "mischaracterized the damages available to the putative class by ignoring statutory liquidated damages" and "represented that attorney's fees would be deducted from any recovery…."[15] The court found EmCare's letter to be misleading as well as coercive,[16] enjoined defendants from making any *ex parte* communications with absent class members regarding the litigation until the end of trial,[17] and imposed sanctions including the issuance of a corrective notice and an extension of the delay for claimants to opt into the collective action.[18]

Here, Plaintiffs attach the affidavit of one of the plaintiffs, Jonaser Castaneda, as well as a copy of the document which Defendant allegedly asked technicians to sign.[19] Per his affidavit, Mr. Castaneda states that he refused to sign the proffered waiver, and that following the May 21,

---

[13] *Crutchfield v. Sewage & Water Board of New Orleans*, Civil Action No. 13-4801, 2014 WL 12658406, at * 4 (E.D. La. July 28, 2014) (requiring any settlement communications with putative class members to inform claimants of their right to consult an attorney, refrain from providing legal advice, and fully disclose claimants' options if claimants chose not to settle claims, "including participation in this class action litigation" and explaining that "courts regularly issue orders requiring that communications with class members contain information on pending litigation and a clear statement of all rights that the party waives by settling outside of the class action.").

[14] 299 F.Supp.2d 664 (E.D. Tex. 2003).

[15] *Id*. at 668.

[16] *Id*. ("As a letter sent from an employer to its employees, any statements in EmCare's letter have heightened potential for coercion because where the absent class member and the defendant are involved in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive."). *See also*, *id*. at 669 ("Defendants' conduct is more egregious in this collective action than it would be in a class action because potential class members must opt into the collective action rather than opt out as in a class action.").

[17] *Id*. at 669.

[18] *Id*. at 670. *But see*, *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 FRD 630, 635 (N.D. Tex. 1994) (prohibiting defendant and defendant's counsel from contacting potential class members but declining to require a corrective notice because "although a clear potential for abuse was established there was little evidence of actual harm. Moreover, the class has yet to be certified. To send a corrective notice at this point with little evidence of actual harm prior to the court's certification of this class, would be premature and potentially confusing.").

[19] R. Doc. 16-3.

5

2019 meeting, Defendant's representative met with him individually "and stated that he does not want to deal with lawyers and lawyers would be bad for me because lawyers will take a fee out of any overtime payment owed."[20] Plaintiffs argue that Defendant's "actions are a not so thinly veiled threat to the employment of anyone who decides to join this lawsuit, and will potentially have a chilling effect on class member participation,"[21] and that during the May 21, 2019 meeting "Defendant fail[ed] to mention this pending litigation, the class members' rights under the law, and misleads (sic) the reader into believing that the execution of the document is necessary for continued employment."[22]

At this stage of these proceedings, the Court does not rule on the merits of Plaintiffs' Motion. Significantly, and assuming *arguendo* that Plaintiffs are entitled to all or some of the sought, Plaintiffs have provided no explanation as to how this Court can impose any limitation or sanction on Defendant at this point. Significantly, "[i]n the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the

---

[20] R. Doc. 16-3, ¶ 9.

[21] R. Doc. 16-1, p. 2.

[22] R. Doc. 16-1, p. 4. *See also*, R. Doc. 16-1, pp. 8-9 ("The statements made by Defendant to the potential class members contain numerous misrepresentations regarding this litigation. Defendant omits and/or misstates the damages available to potential plaintiffs. For example, Defendant suggests that all Plaintiffs are seeking to recover is overtime wages for each hour of work performed as a Technician in excess of 40 hours per week. Defendant fails to mention either liquidated damages, attorneys' fees or costs which Plaintiffs seek to recover for themselves and other similarly situated individuals. In a particularly pernicious move, Defendant states that each potential class member will be responsible for attorney fees."). The Court notes that the alleged misrepresentations as set forth in Plaintiffs' briefing in support of the Motion are more broadly asserted that that set out in Mr. Castaneda's affidavit, wherein he attests that Defendant's representative told him that "lawyers will take a fee out of any overtime payment owed" and that Defendant "would prefer to provide me with whatever amount I believe the company owes me." R. Doc. 16-3, ¶ 9. Further, Plaintiffs provide no controlling authority indicating that a Defendant cannot settle claims over compensation owed with putative members of a FLSA collective action. *See*, *Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 164-165 (5th Cir. 2015) ("[t]he general rule establishes that FLSA claims (for unpaid overtime, in this case) cannot be waived" so many courts have held that settlement of an FLSA claim is prohibited in the absence of supervision by the Department of Labor or courts but "we have excepted, from this general rule, unsupervised settlements that are reached due to a bona fide FLSA dispute over hours worked or compensation owed." (citing *Martin v. Spring Break '83 Production, LLC*, 688 F.3d 247, 255 (5th Cir. 2012)).

6

complaint names as defendant."[23] "Accordingly, one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend."[24] Defendants have not made an appearance in this action. Plaintiffs explain that although they "have been unable to affect service of the Complaint on the Defendant," Defendant "is well aware of this litigation as it has received a certified copy of the Complaint and Waiver of Summons."[25] However, there is no waiver of service contained in the record, and Plaintiffs recognize that they have not affected service upon Defendant. Until Defendant is properly served or a waiver of service is filed into the record, this Court cannot exercise power over the Defendant.

Finally, although Plaintiffs style their Motion as an "emergency," Plaintiffs do not explain the basis for asserting this Motion requires immediate consideration by the Court,[26] and it appears

---

[23] *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). *See also*, *Bradford v. Telerecovery*, Civil Action No. 16-2933, 2017 WL 2573947, at * 4 (E.D. La. June 14, 2017) ("[i]n order for a federal court to exercise personal jurisdiction over a defendant, 'the procedural requirement of service of summons must be satisfied.'") (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) (citing *Miss. Publ'g Corp. v. Murphee*, 326 U.S. 438, 444-45 (1946) ("[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served.")). *See also*, *Hazim v. Schiel & Denver Book Publishers*, 647 Fed. Appx. 455, 461, n. 9 (5th Cir. 2016) (unpubl.) (citing *Omni Capital* and *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant."); *Maiz v. Virani*, 311 F.3d 334, 340 (5th Cir.2002) (holding the district court lacked personal jurisdiction over a defendant who neither received service of process nor made a general appearance)).

[24] *Murphy Bros.*, 526 U.S. at 350.

[25] R. Doc. 16-1, p. 3. The certificates of service attached to the Motion and Plaintiffs' memorandum in support of the Motion both state that the documents were "filed with the Court through the Court's CM/ECF System, and electronic notice of such filing has been sent to all counsel of record." R. Doc. 16, p. 3; R. Doc. 16-1, p. 13. Because Defendant has not made an appearance in this suit, there is no indication that Defendant has been served in any manner with the Motion.

[26] *See*, *Privitera v. Amber Hill Farm, LLC*, No. 5:12-cv-Oc-32TBS, 2012 WL 1900559, at * 2 ("the Court observes that Plaintiff's motion does not allege a true emergency. No one's health or safety is at stake, nobody is at risk of being deprived of an essential service, and nothing that is irreplaceable or for which compensation would not be available is in jeopardy. Whenever someone files an 'emergency' motion the Court drops whatever it is working on to give the motion its full attention. Presumably, opposing counsel does the same thing. It is fundamentally wrong to characterize a matter as an emergency when it obviously is not an emergency."). With respect to the "emergency" at issue here, Plaintiffs only state "Plaintiffs request emergency and expedited relief given the facts surrounding Defendant's actions...." R. Doc. 16, p. 1.

7

that the relief requested in the Motion will be available (if ultimately deemed appropriate) following Defendant's appearance and response to the instant Motion. Related to the issue of Defendant's future response to the Motion, there is no indication in Plaintiffs' briefing that Plaintiffs have reached out to Defendant regarding the alleged communications or otherwise conferred with respect to the Motion.[27]

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs, Jonaser Castaneda and Greg Paliaro ("Plaintiffs") shall serve defendant, Empath, LLC ("Defendant") with a copy of the Supplemental Emergency Motion for Protective Order, Sanctions, and Corrective Notice (the "Motion") as well as with a copy of this Notice and Order, pursuant to Fed. R. Civ. P. 4.

**IT IS FURTHER ORDERED** that following service of the Motion and this Notice and Order on Defendant, Plaintiffs shall confer with Defendants regarding the Motion. **IT IS FURTHER ORDERED** that within fourteen (14) days following service of the Motion and this Notice and Order on Defendant, Plaintiffs shall file either: (1) a Motion to Withdraw Plaintiffs' Supplemental Emergency Motion for Protective Order, Sanctions, and Corrective Notice to the extent the conference resolves the issues raised in the Motion, or (2) a Supplemental Certification. In the event Plaintiffs file a Supplemental Certification, such Supplemental Certification shall specifically set forth: (a) how the conference required by this Notice and Order was scheduled and agreed upon, (b) who participated in the conference, (c) when the conference took place, (d) whether the conference was conducted by phone or in person, (e) the duration of the conference,

---

[27] *See*, *Santos-Lemos*, 313 F.Supp.3d at 720 (explaining – in the context of plaintiffs' motion seeking an order prohibiting defendant or his representatives from contacting or discussing the litigation with any class member or potential class member – that "Rule 26(c)(1) requires a certification that the moving party has conferred or attempted to confer in good faith with the other affected party to resolve the issue without the court's interference.").

(f) the specific, itemized topics that were addressed at the conference, and (g) whether any issues were resolved by the parties, and, if so, the terms of the resolution.

**IT IS FURTHER ORDERED** that, in the event the parties are unable to resolve the issues raised in the Motion, Defendant shall file a response to the Supplemental Emergency Motion for Protective Order, Sanctions, and Corrective Notice within twenty-one (21) days following service of the Motion and this Notice and Order.

Signed in Baton Rouge, Louisiana, on July 5, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**